**GRAHAM, d.b.a. Graham Office Supplies, Appellee,**

v.

**VIERECK, Appellant.**

[Cite as *Graham v. Viereck* (1990), 69 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–50.

Decided July 26, 1990.

*Porter, Wright, Morris & Arthur* and *Brian L. Buzby,* for appellee.

*Lane, Alton & Horst, Jeffrey W. Hutson* and *John A. Fiocca, Jr.,* for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Louis F. Viereck, appellant, from a judgment of the Franklin County Court of Common Pleas in

favor of Clifford Graham, appellee. On September 15, 1986, at approximately 3:30 a.m., a fire was reported to the Columbus Fire Department in a commercial building owned by appellant. Appellant operated a florist shop in one part of the building. The fire spread and damaged the contents and leased premises of appellee, a tenant of appellant, who owned and operated Graham Office Supply in the same building. The record reveals that appellant permitted an eighty-five year-old man, James Lucas, to live in a part of the space that appellant occupied for his floral business.

The appellee's experts, who were all part of the fire investigation, conclusively agreed that the fire originated in the area occupied by Lucas, that being the southwest corner of the main floor of the floral shop. The experts all testified that the fire most likely was caused by a lit cigarette that was dropped in a sofa, which smouldered and eventually burst into flames. The investigators were all in agreement that arson was not the cause of the fire. The appellant's experts, who were not a part of the fire investigation team, testified that there was no physical evidence upon which to base a conclusion regarding the location or cause of the fire.

Appellant asserts that there was no evidence as to who may have started the fire, accidentally or otherwise. Appellee, however, maintains that Lucas probably started the fire accidentally since he had been known to drink and smoke on the premises. The evidence demonstrated that an unopened bottle of wine and the remains of a carton of cigarettes were found near the sofa, in the area Lucas occupied. Lucas contends that he was awakened by the smell of smoke and the sound of bottles bursting. He tried to put the fire out with a fire extinguisher but the fire extinguisher would not work. He ran out of the building and as he raised the large overhead rear door, someone ran past him and out of the building. Lucas gave no physical description of this person nor could he identify the sex of the person.

To recover for his damages, appellee filed a lawsuit against appellant. The parties agreed to try the case before a referee. A four-day trial commenced whereby each party presented witness testimony. However, before the referee rendered a decision, she left the court's employment. Thereafter, rather than retry the case, the parties agreed to submit the record to the trial court. The trial court reviewed the record and witness testimony, and requested and listened to oral arguments of counsel. The trial court then issued its decision finding the appellant guilty of negligence, and rendered a monetary judgment in favor of appellee in the amount of $112,293.39. Thereafter, this appeal ensued whereby appellant asserts the following two assignments of error:

"1. The trial court erred by failing to apply the proper legal standard in this case.

"2. The decision of the trial court was contrary to the manifest weight of the evidence."

In his first assignment of error, appellant asserts that the trial court failed to apply the proper legal standard in this case. Yet, in his brief, appellant concedes that "[i]n its decision and judgment entry, the trial court did not articulate the legal basis for its decision. * * *" Appellant asserts that the proper legal standard to be applied to the facts at bar is set forth in *Woodward v. Mettille* (1980), 81 Ill.App.3d 168, 36 Ill.Dec. 354, 400 N.E.2d 934. That case involved an action against a building owner for the negligence and negligent hiring of a subcontractor, whereby the plaintiff tried to establish the owner's liability for a fire proximately caused by the subcontractor which damaged the plaintiff's property.

Appellee, on the other hand, submits that liability for damages caused by an accidental fire is based upon the general rules of negligence. See *O'Day v. Shouvlin* (1922), 104 Ohio St. 519, 136 N.E. 289. Since this court is bound to follow Ohio precedent, the issue in this case is whether appellant, as owner of the property, is liable for his negligent act, or his employee's negligent act, which was the proximate cause of an accidental fire which spread and caused damage to the property of appellee. The record unequivocally states that appellant permitted James Lucas to live in the southwest corner of the main floor in the building where the fire originated. The legal relationship between appellant and James Lucas can be characterized in several ways.

Appellant testified:

"A. No, he sort of adopted us, we didn't adopt him, but he adopted us.

"Q. He kind of stayed wherever he could hang his hat?

"A. Well, no, he didn't float around. He said, Mr. Viereck, I would like to stay here, if I could, and I will watch the building for you which, apparently, he did, which we thought.

"* * *

"A. For his safety, yes. He agreed to do that. He thought that was a fine idea. As a matter of fact, I carried an insurance policy on him for a while, there, too.

"Q. Life insurance?

"A. Um-hm. I did that out of my own, but that's beside the point.

"Q. Now, as I recall, Mr. Viereck, you really didn't mind Lucas staying back there at night because you actually thought he sort of benefited the building?

"A. If they know somebody is in the building, I think it would keep anybody from coming in. Of course, I didn't invite him. He really asked if he could do it. So I did it as a favor.

"Q. Again, as I recall in your deposition, you said he actually sort of functioned like a night watchman back there?

"A. Yeah. He may have acted in that capacity.

"Q. Lucas testified in his deposition about paying rent. Did he pay you rent?

"A. No. * * * "

Thus, based on appellant's testimony, it is evident that there was a *quid pro quo* relationship established between appellant and Lucas. In exchange for providing Lucas with a place to live, appellant was receiving a security service from Lucas's presence on the property at night. Consequently, on the night in question, one can conclude that Lucas was acting within the scope of his employment as a night watchman. See *Tiffin v. McCormack* (1878), 34 Ohio St. 638. Likewise, although not related to the fire, there is also evidence that an employer-employee relationship existed between appellant and Lucas by virtue of the fact that appellant testified that he periodically hired Lucas to wash windows for him.

The trial court's December 12, 1989 judgment entry states, in pertinent part:

"It is the finding and conclusion of this Court that the Defendant, Louis F. Viereck, was negligent and that his negligence of itself [*sic*] and combined with the negligence of James Lucas was the proximate cause of the fire on September 15, 1986, and that this negligence and fire caused damage and loss to Plaintiff in the amount of $112,293.39."

Although the trial court does not set forth the legal basis upon which liability was imposed upon appellant and James Lucas, there is sufficient evidence in the record to define an employer-employee relationship between the two. Furthermore, as will be discussed more fully in addressing the second assignment of error, there is sufficient evidence which establishes the negligence of James Lucas, which, because of the employer-employee relationship, becomes imputed to appellant. See *McCormack, supra*. Also, the trial court's judgment implies that there is a sole basis of liability attributable to appellant alone, which when combined with the negligence of James Lucas, establishes proximate cause.

In momentarily disregarding the employer-employee relationship between appellant and James Lucas, it is apparent that appellant permitted James Lucas to live on his premises. Whether this relationship is characterized as a landlord-tenant relationship or a friend allowing another friend to live on his premises, the conclusion in this case nonetheless results in a negligent act being committed by appellant. In June 1986, appellant and James Lucas were issued emergency orders to "vacate immediately" after an inspection by a city housing inspector who determined that Lucas's living conditions at appellant's place of business were uninhabitable and that Lucas's health and safety were in jeopardy. The city housing inspector had learned of the deplorable conditions in which James Lucas was living through an article that appeared in the Columbus Dispatch that same day, June 20, 1986. The housing inspector returned to Viereck's premises the next day to ensure that appellant had complied with the emergency orders. The inspector was assured that Lucas was off the premises and was working with the relocation office of the city of Columbus. Thus, by admitting that James Lucas was living on the premises the night of September 15, 1986, and not knowing whether he was living in the basement or the main floor, appellant was admitting that he was in violation of a city housing order. Thus, appellant's negligent act serves as a legal basis for imposing liability solely on appellant. Furthermore, there was testimony throughout the record which substantiated that the condition of appellant's premises was conducive to acting as a fire hazard.

The proceedings and conclusions of the trial court enjoy a presumption of correctness, and appellant has failed to rebut that presumption. It is presumed that the trial court applied the correct legal standard of negligence and, accordingly, appellant's first assignment of error is not well taken and is overruled.

In the second assignment of error, appellant asserts that the trial court's decision is contrary to the manifest weight of the evidence. In reviewing a challenge based on the manifest weight of the evidence, this court is bound by the presumption of correctness and by the holding set forth in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

Appellant asserts in his brief and reply brief that the cause of the fire was attributable to arson, that the fire department's report indicates that the cause of the fire was "undetermined," that there was no evidence that James Lucas was drinking or smoking the night of the fire, and that a fire set in a

pile of materials located in the southwest corner of the first floor spread to the contents of the mezzanine which collapsed upon the couch from above, setting fire to it. However, upon review of the record, appellant has offered no conclusory expert testimony to support these assertions as postulated in his briefs.

Appellant offered the testimony of two expert witnesses. Donald E. Werner, Jr., Fire Chief for the city of Columbus, testified that the September 16, 1986 incident report indicates that the cause of the fire was "undetermined." However, on cross-examination, he testified that the report stated the cause of the fire to be "undetermined" since no investigation had been conducted at that point in time, the morning of the fire. He further testified that he did not participate in the investigation. Appellant also offered the expert testimony of Ralph Burden, a former Battalion Chief for the city of Columbus and Fire Chief of Westerville, Ohio. Burden did not take part in the investigation and was retained by appellant to evaluate the investigation report. It was his opinion that there was nothing in the reports or files that would indicate conclusively where or how the fire started.

To the contrary, appellee presented four expert witnesses. Thomas Peterson, an INS insurance claims investigator, was at the scene on September 15 and 16, 1986. He identified the southwest corner of the main floor of appellant's floral shop as the point of origination of the fire. In particular, he testified that the fire actually started within a couch and was a slow, smouldering-type fire which broke into open flame. By elimination of all other possible means of ignition, Peterson testified that it was his opinion that the probable cause of the fire was the introduction of, or the careless discarding of, smoking materials in the couch.

William Tenney, an INS field agent specializing in the cause and origin of fires and insurance fraud investigations, also surveyed the scene of the fire on September 15 and 16, 1986. He was also in agreement that the fire began in the southwest corner of appellant's floral shop building. It was his opinion that the probable cause of the fire was the improper use of burning materials, such as smoking materials or matches, which started a fire inside the sofa bed.

Mark Devine, battalion chief in charge of the Fire Prevention Bureau, also testified in appellee's behalf. The Fire Prevention Bureau is a unit of trained professionals entrusted with the responsibility of investigating a fire and determining its cause and origin. It was his testimony that the fire was not intentionally set since there was no physical evidence of arson found at the scene. He testified that the burn pattern of the wood caused him to conclude that the point of origin of the fire was inside the couch, most probably by a

discarded cigarette. Devine also stated that, when James Lucas ran out and left the rear door open, he contributed to the spread of the fire by allowing in more oxygen. Once the fire was fed with more oxygen, the dried flowers, baskets, boxes and other materials which were stored in the area caused the fire to spread to other areas more rapidly.

Billy Reedus, an arson investigator with the Fire Prevention Bureau of the Columbus Fire Department, also investigated the scene of the fire in the matter herein. He testified that he found an unopened wine bottle and the remains of a carton of cigarettes within arm's reach of the couch. It was his expert opinion that a smouldering cigarette caused the inside of a sofa to catch fire. He also stated that arson was not involved in this case since no physical evidence of an arson was discovered.

Based upon the overwhelming collaborative testimony of appellee's witnesses, there was sufficient evidence in the record upon which the trial court could conclude that appellant and his employee, James Lucas, were negligent, thus making appellant liable to appellee for the damage caused to appellee's business by the September 15, 1986 fire. Accordingly, appellant's second assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's first and second assignments of error are not well taken and are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOWMAN and BROWN, JJ., concur.

ROBERT J. BROWN, J., of the Wayne County Court of Common Pleas, sitting by assignment.